The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 10, 2022

## 2022COA131

**No. 22CA0467, *Amaya v. Indus. Claim Appeals Off.* — Workers' Compensation — Death Benefits — Dependents — Apportionment — Compensation in Lump Sum — Proportionate Share**

In this workers' compensation appeal, a division of the court of appeals concludes that the apportionment of death benefits among a deceased worker's dependents under section 8-42-121, C.R.S. 2022, determines a dependent's "proportionate share" of the maximum lump sum allowed by statute under section 8-43-406(3), C.R.S. 2022. The division thus affirms the Industrial Claim Appeals Office order setting aside an order of the Director of the Division of Workers' Compensation and concluding that Sandra Amaya, a dependent of decedent, Angel Batista de Jesus, was entitled to 25% of the maximum lump-sum amount of Batista's death benefits.

Court of Appeals No. 22CA0467
Industrial Claim Appeals Office of the State of Colorado
WC Nos. 5-117-273 & 5-149-129

_____

Sandra Amaya, dependent of decedent, Angel Batista de Jesus,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado; Brand X Hydrovac
Services, Inc.; and Standard Fire Insurance Company,

Respondents.

_____

ORDER AFFIRMED

Division III
Opinion by JUDGE FOX
Tow and Yun, JJ., concur

Announced November 10, 2022

_____

Kaplan Morrell, LLC, Britton J. Morrell, Greeley, Colorado, for Petitioner

Philip J. Weiser, Attorney General, Patrick L. Sayas, Senior Assistant Attorney
General, Denver, Colorado, for Respondent Industrial Claim Appeals Office

Ray Lego and Associates, Jonathan S. Robbins, Greenwood Village, Colorado,
for Respondents Brand X Hydrovac Services, Inc. and Standard Fire Insurance
Company

Philip J. Weiser, Attorney General, Christopher K. Boeckx, Assistant Attorney
General, Denver, Colorado, for Amicus Curiae Colorado Department of Labor
and Employment, Division of Workers' Compensation

¶ 1     In this workers' compensation appeal, we must analyze the

interplay between two statutes: section 8-42-121, C.R.S. 2022,

which governs the apportionment of death benefits among a

deceased worker's dependents, and section 8-43-406(3), C.R.S.

2022, which governs a lump-sum disbursement when there are

multiple dependents.

¶ 2     Section 8-42-121 reads,

> Death benefits shall be paid to such one or
> more of the dependents of the decedent, for the
> benefit of all the dependents entitled to such
> compensation, as may be determined by the
> director, who may apportion the benefits
> among such dependents in such manner as
> the director may deem just and equitable.

¶ 3     A dependent may elect to receive part of the death benefits in a

lump sum.  § 8-43-406(1).  Section 8-43-406(3) then provides,

> If a claimant who has been awarded
> compensation is one of multiple dependents of
> a deceased injured worker, the aggregate of all
> lump sums granted to the claimant must be a
> proportionate share, as determined by the
> director or administrative law judge, of an
> amount not to exceed [an annually adjusted
> maximum lump sum].

¶ 4     Specifically, we must determine whether the apportionment of

death benefits among the deceased worker's dependents under

section 8-42-121 determines a dependent's "proportionate share" of the maximum lump sum allowed by section 8-43-406(3). We conclude that it does.

¶ 5     An administrative law judge (ALJ) determined that Sandra Amaya, a dependent of decedent, Angel Batista de Jesus, is entitled to 25% of the benefits payable due to Batista's death under section 8-42-121. Amaya then requested a lump-sum disbursement of the death benefits under section 8-43-406(3) equating to 50% of the maximum lump sum allowed by statute. The Director of the Division of Workers' Compensation (Director) granted her request. However, the Industrial Claim Appeals Office (Panel) set aside the Director's order, concluding that Amaya is entitled to only 25% of the maximum lump-sum amount.

¶ 6     Amaya appeals that final order. Because we conclude that an apportionment of death benefits under section 8-42-121 controls a dependent's proportionate share of the maximum lump sum allowed by section 8-43-406(3), we affirm the Panel's final order.

## I.    Background

¶ 7     In August 2019, Batista suffered a fatal work injury during the course and scope of his employment with Brand X Hydrovac

2

Services, Inc. (employer). Batista left two dependents: Amaya (his wife) and their minor child, I.R. An ALJ apportioned the death benefits between Amaya (25%) and I.R. (75%) under section 8-42-121. The employer and the carrier, Standard Fire Insurance Company (collectively respondents), filed a General Fatal Admission of Liability (GFAL), admitting to weekly death benefits of $255.64 to Amaya and $766.92 to I.R.

¶ 8     Amaya then requested a lump-sum distribution of a portion of her total death benefits in an amount equating to 50% of the maximum lump sum available for the claim.

¶ 9     Respondents objected, arguing, as relevant here, that section 8-43-406(3) limits Amaya's lump-sum disbursement because she is one of two dependents and I.R.'s interests had not been addressed.

¶ 10    The Director granted Amaya's request, awarded her 50% of the maximum lump sum allowed by statute, and reduced her weekly benefit amount by $86.27 to offset the benefits she would receive in a lump sum (first disbursement order). The Director determined that Amaya's right to a lump sum vested on the filing of the GFAL, so she could elect to receive any or all of the compensation up to the statutory maximum.

¶ 11     Respondents filed a petition to review the Director's first disbursement order, arguing, as relevant here, that the order was contrary to applicable law. The Director dismissed the petition, concluding that the order was not subject to review because it did not award or deny a benefit or penalty.

¶ 12     Respondents then filed a petition for review by the Panel and a brief in support of their petition. The Panel concluded that (1) the Director's order was reviewable to determine whether he had exceeded his authority; (2) the ALJ had already determined Amaya's proportionate share of the lump sum (25%); and (3) the Director's findings were insufficient to determine whether he had correctly applied section 8-43-406(3). So the Panel set aside the Director's order and remanded the case for the Director to make additional findings and enter a new order.

¶ 13     On remand, the Director again awarded Amaya 50% of the maximum lump sum allowed by statute (second disbursement order), finding that

- sections 8-42-121 and 8-43-406(3) are in different articles, have different methods of apportionment, and are unrelated;

- the authority to determine the proportionate share of a lump sum is wholly distinct from and not contingent on the authority to apportion benefits;

- the ALJ did not determine the proportionate share of the lump sum;

- the "proportionate or equal share of the maximum lump sum available [is] based on the number of dependents when the first lump-sum request is made";

- Amaya is entitled to one-half of the maximum lump sum because she is one of two dependents; and

- I.R.'s interests are not affected because Amaya's request did not change his ability to request his separate, individual share of the lump sum.

¶ 14    After respondents filed a petition to review the second disbursement order, the Director issued a supplemental order directing respondents to comply with that order. The supplemental order reiterated that section 8-43-406(3) gives the Director the authority to apportion lump sums among multiple dependents and that authority, which was "a mere variation in the mechanism of

5

payment" and is "wholly distinct [from] and not contingent upon the authority to apportion benefits."

¶ 15    Respondents then filed a petition for review by the Panel and a brief in support of their petition, arguing that the ALJ's apportionment of death benefits under section 8-42-121 applies to the proportionate share under section 8-43-406(3) when a dependent requests a lump-sum disbursement.

¶ 16    On review, the Panel set aside the Director's supplemental order, concluding that the order was appealable, the Director had misapplied section 8-43-406(3), and Amaya is only entitled to 25% of the maximum lump sum allowed by statute.  Regarding the appealability of the order, the Panel reasoned that, although a lump-sum order is generally not appealable, the order is appealable if the Director exceeded his authority or failed to act.  The Panel concluded that the Director misapplied section 8-43-406(3) and exceeded his authority by granting Amaya 50% of the maximum lump-sum amount because it essentially increased the amount of benefits to which she is entitled.  In support of its conclusion, the Panel determined that

- the legislature removed the Director's discretionary authority to determine a lump-sum amount in 2007;

- before 2014, each dependent in a claim could elect to take the maximum individual lump-sum amount;

- after 2014, the legislature added subsection (3) to section 8-43-406 so that one lump-sum amount should be split between dependents in a single claim in proportionate shares;

- the legislature's use of the phrase "proportionate share" — combined with its removal of the Director's discretionary authority to determine a lump-sum award — shows that it intended for the share to be determined by the original award of compensation;

- if the legislature had intended to allow the Director to determine a dependent's portion of the lump sum in an amount different from the original death benefit award, it could have said so; and

- instead, the legislature referenced the "proportionate share" of the "awarded" compensation.

## II.    Reviewability of the Director's Award

¶ 17    Amaya argues that the Director's order is not subject to review because (1) lump-sum orders are only procedural and ministerial in nature and do not create, eliminate, or modify a party's vested rights or liabilities; (2) the order only addressed the manner and timing of her receipt of a portion of the death benefits; and (3) the order apportioning total death benefits and the order determining the proportionate share of the lump-sum amount did not divide portions of the same pie.  We conclude that we may review the Director's order.

¶ 18    In a workers' compensation case, a party may file a petition to review an order that (1) "determines compensability of a claim or liability of any party"; (2) "requires any party to pay a penalty or benefits"; or (3) "denies a claimant any benefit or penalty." § 8-43-301(2)(a)(I), C.R.S. 2022.  However, the statute does not provide for the review of procedural orders.  *See id.*  Thus, a lump-sum order is generally not subject to review because it does not grant or deny a benefit or a penalty.  *See Specialty Rests. Corp. v. Nelson,* 231 P.3d 393, 400 (Colo. 2010) ("An employee's choice to receive a lump sum payment does not create, eliminate, or modify

8

vested rights or liabilities" but only "alters the method of distribution of the existing award.").

¶ 19    Yet, such an order is reviewable if the Director exceeds his authority or fails to act.  Even before 2007, when the lump-sum statute expressly provided that "the [D]irector's order shall be final and not subject to review," *see* § 8-43-406(1), C.R.S. 2006, a lump-sum order was reviewable if the Director acted "in excess of the authority granted that office" or "fail[ed] to act."  *Warren v. S. Colo. Excavators*, 862 P.2d 966, 969 (Colo. App. 1993).

¶ 20    Because respondents asserted that the Director exceeded his authority by awarding Amaya 50% of the lump sum when the ALJ only apportioned 25% of the death benefits to her, the order is reviewable.  Thus, we may review the order to determine whether the Director exceeded his authority.

### III.    Lump-Sum Award

¶ 21    Amaya argues that the Panel conflated the ALJ's authority to apportion benefits under section 8-42-121 with the Director's authority to apportion lump-sum disbursements under section 8-43-406(3) because (1) the legislature did not link the statutes, and (2) the Director's interpretation of the phrase "proportionate

9

share" — as dividing the maximum lump sum available by the number of dependents — is reasonable and should be given deference. She contends that the Panel's interpretation (1) ignored the fact that, when there are multiple dependents, a dependent's percentage share of the death benefits varies over time based on the age, death, or remarriage of a dependent; (2) did not consider the actual share a dependent will receive over a lifetime; (3) deprived the Director from considering the totality of the circumstances, such as whether the dependents reside in the same household or are hostile to each other; and (4) failed to defer to the Division's interpretation of the statute.

## A.     Standard of Review

¶ 22     We review de novo the Panel's interpretation of sections 8-42-121 and 8-43-406(3). *See Fisher v. Indus. Claim Appeals Off.*, 2021 COA 27, ¶ 15. We also review de novo questions of law and the application of law to undisputed facts. *See id.* at ¶ 14. We are not bound by the Panel's decision if it misconstrues or misapplies the law. *See id.*

## B. Principles of Statutory Construction

¶ 23    "Our primary objective in construing a statute is to effectuate the intent of the General Assembly." *Specialty Rests.*, 231 P.3d at 397.  In determining that intent, we construe the statutory scheme as a whole in a manner that gives "consistent, harmonious, and sensible effect to all parts." *In re Marriage of Wenciker*, 2022 COA 74, ¶ 17 (citation omitted).

¶ 24    "If the statutory language is clear, we interpret the statute according to its plain and ordinary meaning." *Specialty Rests.*, 231 P.3d at 397.  In so doing, we "give effect to every word and render none superfluous because we 'do not presume that the legislature used language idly and with no intent that meaning should be given to its language.'" *SkyWest Airlines, Inc. v. Indus. Claim Appeals Off.*, 2020 COA 131, ¶ 31 (quoting *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008)).  The legislature's failure to include certain language is also a "statement of legislative intent." *Specialty Rests.*, 231 P.3d at 397.

¶ 25    We defer to the Panel's reasonable interpretation of a statute it administers, but we are not bound by that interpretation.  *See SkyWest*, ¶ 32.  "Still, 'the Panel's interpretation will be set aside

11

only if it is inconsistent with the clear language of the statute or with the legislative intent.'" *Id.* (quoting *Support, Inc. v. Indus. Claim Appeals Off.*, 968 P.2d 174, 175 (Colo. App. 1998)).

¶ 26    Moreover, "we traditionally give deference to the interpretation of a statute adopted by the officer or agency charged with its administration." *Specialty Rests.*, 231 P.3d at 397. "The Division is the agency charged with administration of the Colorado Workers' Compensation Act," which includes "the calculation of lump sum payments." *Id.* But we do not defer to the agency's interpretation when that interpretation is contrary to statutory law. *Gessler v. Colo. Common Cause*, 2014 CO 44, ¶ 7.

### C.    Analysis

¶ 27    There is no dispute that the ALJ apportioned the death benefits among Amaya (25%) and I.R. (75%) in a just and equitable manner pursuant to section 8-42-121. The parties instead disagree about whether that apportionment controls a dependent's proportionate share of a lump sum under section 8-43-406(3).

¶ 28    After six months have elapsed from the date of injury, a dependent may elect to receive part of the death benefits awarded in

a lump sum.  § 8-43-406(1).  The maximum lump sum allowed by statute is adjusted annually by the Director.  *See* § 8-43-406(4).

¶ 29     "[A] lump sum is an advance payment of the amount the [recipient] is entitled to receive via bi-weekly payment over the remainder of her life expectancy, reduced by four-percent to discount for present value and capped at the maximum aggregate provided by statute."  *Specialty Rests.*, 231 P.3d at 398.  If she is "entitled to more than the maximum aggregate lump sum available, her remaining bi-weekly payment is reduced by the amount of the lump sum payment spread out over the remainder of her life expectancy."  *Id.*

¶ 30     When there are multiple dependents and one of them elects to receive a lump-sum payment, the dependent may receive a "proportionate share" of the maximum lump sum allowed by statute.  § 8-43-406(3).

¶ 31     In this appeal, the parties dispute how a dependent's proportionate share should be determined.  Amaya and the Division argue that the Director has the authority to determine a dependent's proportionate share independent of the apportionment of death benefits under section 8-42-121.  They urge us to adopt

13

the Division's interpretation that a proportionate share is determined by the number of dependents at the time a lump sum is requested. Under that interpretation, Amaya and I.R. (the two dependents) each would be entitled to receive 50% of the maximum lump sum allowed by statute.

¶ 32     On the other hand, respondents and the Panel argue that sections 8-42-121 and 8-43-406(3) must be construed together as part of the broader statutory scheme. They contend that the apportionment of death benefits under section 8-42-121 necessarily determines a dependent's proportionate share of the maximum lump sum allowed under section 8-43-406(3).

¶ 33     We agree with the latter interpretation. In construing section 8-43-406(3), we must consider the statutory scheme as a whole. *See Wenciker*, ¶ 17. Under that statutory scheme, a dependent's benefits are determined under section 8-42-121. That statutory section is located in the article entitled "Benefits." And those benefits are apportioned among the dependents in a "just and equitable" manner.

¶ 34     "Apportioned" means "to divide and assign in proportion: divide and distribute proportionately." Webster's Third New

International Dictionary 105 (2002).  Similarly, "apportionment" is defined as the "[d]ivision into proportionate shares; esp., the division of rights and liabilities among two or more persons." Black's Law Dictionary 125 (11th ed. 2019).

¶ 35     Only after the death benefits have been apportioned among the dependents — that is, after they have been divided and assigned in proportionate shares — may one of the dependents request the disbursement of those funds in a lump sum under section 8-43-406(3).  The legislature placed the lump-sum statute in an article entitled "Procedure," which is in Part 4, labeled "Enforcement and Penalties."  *See Specialty Rests.*, 231 P.3d at 397 ("We hold that the lump sum provision of the Colorado Workers' Compensation Act is procedural in nature.").  The placement of the statute shows that the legislature intended for a lump-sum disbursement to act as a mechanism to receive an advance payment of a benefit that has already been awarded.  *See id.* (stating that "a lump sum payment does not create, eliminate, or modify the parties' existing rights or liabilities" and that "an employee's election of a lump sum payment simply alters the method of distribution of an existing award").

15

¶ 36    Indeed, the plain meaning of the language of section 8-43-406(3) confirms this intent.  It begins, "If a claimant *who has been awarded compensation* is one of multiple dependents."  § 8-43-406(3) (emphasis added).  Thus, subsection (3) of the lump-sum statute relates back to section 8-42-121, under which the benefits are initially apportioned among and awarded to the dependents.

¶ 37    Subsection (3)'s language also states that "the aggregate of all lump sums granted to the claimant must be a proportionate share, *as determined* by the director or [ALJ]."  *Id.* (emphasis added).  The word "determined" is in the past tense, which suggests that the proportionate share has already been apportioned to the dependent when the dependent elects to receive a lump-sum payment.

¶ 38    This interpretation is supported by the legislature's prior use of the present tense when granting the Director the authority to determine whether to award a claimant a lump-sum payment.  Before 2007, section 8-43-406(1) gave the Director substantial discretion in determining whether to make such an award.  At that time, the section read,

16

> At any time after six months have elapsed from the date of injury, the director, in the exercise of discretion, after five days' prior notice to the parties, may order payment of all or any part of the compensation awarded in a lump sum, or *in such manner as the director may determine* to be for the best interests of the parties concerned, and the director's order shall be final and not subject to review.

§ 8-43-406(1), C.R.S. 2006 (emphasis added). The use of the present tense "determine" in the former version of the statute, contrasted with the use of the past tense "determined" in the current version of the statute, supports a conclusion that the legislature's use of the past tense means that the Director or the ALJ has already determined a dependent's proportionate share when the request for a lump sum is made.

¶ 39    This interpretation is also supported by the legislature's amendment of the statute in 2007 to remove the Director's discretion in awarding a lump sum to a claimant. *See* Ch. 341, sec. 9, § 8-43-406(1), 2007 Colo. Sess. Laws 1475; *see also Specialty Rests.*, 231 P.3d at 399. That revision gave the claimant the ability to elect a lump-sum payment based on the benefits that had already been awarded.

¶ 40    And when the legislature added subsection (3) to section

8-43-406 in 2014, it delineated the manner for dividing the

maximum lump sum allowed by statute between multiple

dependents based on the benefits that had already been awarded

and in the proportionate share that had already been "determined."

Ch. 316, sec. 9, § 8-43-406(3), 2014 Colo. Sess. Laws 1375.

¶ 41    We therefore conclude that the apportionment of benefits

among the dependents under section 8-42-121 controls a

dependent's proportionate share of the maximum lump sum

allowed by statute under section 8-43-406(3).  Therefore, we agree

with the Panel that Amaya is only entitled to receive 25% of the

maximum lump sum available in this claim.  I.R. is entitled to

receive the other 75% if he elects to request a lump sum.

¶ 42    In reaching this conclusion, we reject Amaya's argument that

the legislature did not link the statutes.  Both statutes are part of

the same statutory scheme.  And a dependent may not request a

lump sum under section 8-43-406(3) until the benefits have first

been apportioned under section 8-42-121.

¶ 43    We also reject Amaya's contention that we should defer to the

Division's interpretation of the phrase "proportionate share" — as

18

meaning dividing the available lump sum by the number of dependents — because it is reasonable. That interpretation is not reasonable for the above stated reasons. Therefore, we need not defer to the Division's interpretation of section 8-43-406(3).

¶ 44 Amaya also argues that the Panel did not consider that, when there are multiple dependents, a dependent's percentage share varies over time based on age, death, or remarriage; the dependent's expected benefit over her lifetime; or the totality of the circumstances. However, after the legislature removed the Director's discretion in determining a lump-sum award, the only relevant factor is a dependent's proportionate share at the time the lump sum is requested. Thus, those factors are no longer relevant.

IV.   Conclusion

¶ 45 The Panel's order is affirmed.

JUDGE TOW and JUDGE YUN concur.